United States Court of Appeals,

Eleventh Circuit.

No. 96-7077

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee,

v.

Danny W. GARNETT, Defendant-Appellant.

Sept. 22, 1997.

Appeal from the United States District Court for the Middle District of Alabama. (No. CR-96-71-N), W. Harold Albritton, Judge.

Before HATCHETT, Chief Judge, EDMONDSON, Circuit Judge, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

A jury found Danny Garnett guilty of consumer product tampering in violation of 18 U.S.C. §§ 1365(a) and (g). The indictment alleged that, while employed by Dr. C. Kirven Ulmer as a physician's assistant, Garnett removed approximately 450 hydrocodone tablets from 30 bottles and replaced them with other medications knowing that the substituted medication could and would be erroneously dispensed to patients for whom hydrocodone was intended. Garnett admitted to an Food & Drug Administration agent that he took the drugs for personal use.

18 U.S.C. § 1365(a) provides a penalty for "tamper[ing] with any consumer product that affects interstate or foreign commerce, or the labeling of, or container for, any such product ..." Although § 1365(a) extends to tampering with the labeling or container of a product, the indictment only charged Garnett with tampering with the product. Garnett asserts first that the evidence was insufficient to support his conviction and, second, that the district court erred by admitting a lab report without the testimony of its preparer. We affirm.

DISCUSSION

I. Sufficiency of the Evidence

Garnett says that the evidence was insufficient to support his conviction because the government did not produce any evidence that he tampered with hydrocodone tablets; he merely removed them from their bottles. He asserts that this is theft at most, not an element of § 1365(a) or commensurate with tampering. The government asserts that substituting other medicines for the hydrocodone tablets is tampering within § 1365(a)'s language and legislative history.

We find only one case that has considered whether removing a drug and replacing it with a substitute constitutes tampering under § 1365(a). In *U.S. v. Cunningham,* 103 F.3d 553, 555 (7th Cir.1996), *cert. denied,* --- U.S. ----, 117 S.Ct. 1481, 137 L.Ed.2d 692 (1997), the court interpreted § 1365(a) to "forbid[ ] tampering that reduces the efficacy of a drug designed to save life or alleviate a bodily injury, as well as tampering that turns the drug into a poison." Defendant, a nurse and admitted addict, removed the painkiller Demerol from syringes and replaced the drug with a saline solution. She argued that withholding pain medication did not place anyone in danger of bodily injury since failing to relieve pain was not the same as causing pain. Rejecting this argument, the court affirmed the conviction:

> In light of the goals reasonably to be imputed to a statute that punishes product tampering with injurious consequences expressly including pain, conduct that perpetuates an injury by preventing it from being alleviated by the product designed for that end is on the same footing as tampering that creates a fresh injury, as when the tamperer introduces a poison into a drug. In either case there is an injury that would not have occurred had the tampering not occurred. We cannot think of any reason to distinguish between the two cases.

*Id.* at 555-56.

By replacing hydrocodone with other drugs Garnett increased the risk that injury from incorrectly dispensed drugs would occur. Surely he reduced the efficacy of a bottle of hydrocodone tablets by introducing other drugs into the bottles after scratching off their identifying marks. While Garnett did not alter the hydrocodone tablets themselves his actions constitute tampering under § 1365(a).

The government urges that its interpretation is consistent with § 1365's purpose—increasing the penalty for willful wrongful conduct. Section 1365's legislative history indicates that it was enacted because penalties under the Federal Food, Drug and Cosmetic Act were too lenient. The

2

government points out that § 351(d) of that Act defines substitution as a form of adulteration. Although § 1365 does not define "tampering," we hold, based on the purposes of the Act and *Cunningham,* that Garnett's act of replacing one drug with another constitutes tampering with the first drug.[1]

II. Admission of Lab Report Without Testimony of its Author

Pursuant to the business records exception and testimony of Dr. Duane Satzger, the district court admitted Government Exhibit 8, a lab report prepared by Lee Ellis of the F.D.A. Forensic Chemistry Center. It identified other drugs found in the five bottles of hydrocodone removed from Dr. Ulmer's office. The report was prepared in the ordinary course of business under the supervision of Dr. Satzger who is the director of the organic branch of the Forensic Chemistry Center. [R3:82-83]. Garnett contends that the court abused its discretion by admitting the report without the testimony of Ellis, its preparer.

The district court has broad discretion in ascertaining admissibility of business record evidence, which should not be disturbed on review in absence of abuse. *Capital Marine Supply, Inc. v. M/V Roland Thomas, II,* 719 F.2d 104, 106 (5th Cir.1983). In this case the report was properly admitted. *See, e.g., U.S. v. Baker,* 855 F.2d 1353, 1359 (8th Cir.1988)(lab reports identifying drugs were admissible as business records since they were made on a routine basis). Fed. R. Evid. 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized. It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents. *Itel Capital Corp. v. Cups Coal Co.,* 707 F.2d 1253, 1259 (11th Cir.1983).

Based on his personal knowledge of F.D.A. protocol and the procedures followed in this case, Dr. Satzger laid the foundation for admission of the lab report. He testified that reports like

---

[1]The parties cite *U.S. v. Johnston,* 42 F.3d 1328 (10th Cir.1994), *U.S. v. Levine,* 41 F.3d 607 (10th Cir.1994) and U.S. v. *Nukida,* 8 F.3d 665 (9th Cir.1993), none of which addresses the question. *Johnston & Levine* involved violation of § 1365(b), which penalizes anyone who taints a consumer product with intent to cause serious injury to the business of any person. *Nukida* dealt with the requirement that a consumer product affect interstate commerce.

the one at issue are regularly prepared at the F.D.A. lab in the normal course of business and that he physically observed the drug samples and reporting in this case.  Any matter affecting the credibility of the report was for the jury to weigh.  There was no error.

AFFIRMED.