[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 13, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13637

_____

D. C. Docket No. 04-00502-CR-2-VEH-JEO

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

HANNIBAL SONNY CRUMPLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(April 13, 2007)**

Before HULL and MARCUS, Circuit Judges, and BARZILAY,[*] Judge.

_____

[*]Honorable Judith M. Barzilay, Judge, United States Court of International Trade, sitting
by designation.

BARZILAY, Judge:

This case arises on appeal from Defendant-Appellant Hannibal Sonny Crumpler's ("Crumpler" or "Defendant-Appellant") conviction for conspiracy to commit fraud and for providing false statements to auditors, pursuant to 15 U.S.C. §§ 78j(b), 78ff, 78m(a) & (b)(2), 18 U.S.C. §§ 2, 371, and 17 C.F.R. §§ 240.10b-5, 240.13b2-1, 240.13b2-2(a), and the resulting forfeiture under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). Crumpler raises five principal arguments in his appeal. He maintains (1) that the district court abused its discretion by determining that his notes did not qualify for admission under the business records exception to the hearsay rule; (2) that the court improperly imposed and enforced general guidelines for questioning witnesses; (3) that the court abused its discretion when it denied Crumpler's attempt to question a witness about whether the witness had previously claimed under oath to be the smartest man in the world; (4) that the application of the Civil Asset Forfeiture Reform Act ("CAFRA") to proceeds that Crumpler obtained before the law's effective date violated the *Ex Post Facto* Clause of the United States Constitution; and (5) that the jury's forfeiture verdict based upon Crumpler's stock options should have assessed the stocks' value at the time that he exercised his options, rather than when he sold the stock. For the reasons stated below, the Court affirms the district court on all grounds.

2

## I. Jurisdiction and Standard of Review

This Court has jurisdiction over appeals from the judgment of criminal conviction from the District Court of Northern Alabama pursuant to 28 U.S.C. § 1291.

## II. Exclusion of Evidence Under the Business Records Exception

"The district court has broad discretion in ascertaining admissibility of business record evidence, which should not be disturbed on review in absence of abuse." *United States v. Garnett*, 122 F.3d 1016, 1018 (11th Cir. 1997) (per curium); *accord United States v. Petrie*, 302 F.3d 1280, 1285 (11th Cir. 2002). In keeping with this deferential standard of review, this Court "review[s] factual findings regarding the admissibility of business records . . . under a clearly erroneous standard." *Petrie*, 302 F.3d at 1285. If the Court finds an abuse of discretion, it still will not reverse the lower court's decision "unless the evidence had a substantial impact on the verdict," *i.e.*, was not harmless. *United States v. Campbell*, 73 F.3d 44, 47 (5th Cir. 1996) (per curium); *accord United States v. Fallen*, 256 F.3d 1082, 1091 (11th Cir. 2001). The Court, in turn, determines whether an error was harmless "by weighing the record as a whole, . . . examining 'the facts, the trial context of the error, and the prejudice created thereby as juxtaposed against the strength of the evidence of [the] defendant's guilt.'" *United*

3

*States v. Hands*, 184 F.3d 1322, 1329 (11th Cir. 1999) (quoting *United States v. Reed*, 700 F.2d 638, 646 (11th Cir. 1983)).  "Harmless error review . . . does not require [the court] to view witnesses' credibility in the light most favorable to the government."  *Id.* at 1330 n.23.

> Rule 803(6) of the Federal Rules of Evidence permits into evidence
>
> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Fed. R. Evid. 803(6).  "It is not necessary for the person who actually prepared the documents to testify so long as there is other circumstantial evidence and testimony to suggest the trustworthiness of the documents."  *Garnett*, 122 F.3d at 1019.  Likewise, "it is not necessary that a sponsoring witness be employed by the business at the time of the making of each record.  The witness must only be in a position to attest to its authenticity."  *United States v. Evans*, 572 F.2d 455, 490 (5th Cir. 1978) (internal citation omitted).[1]

_____

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions handed down by the former Fifth Circuit before

4

**A. The District Court Properly Refused to Allow the Notes into Evidence**

During the trial, Crumpler sought to enter into evidence six handwritten and typed notes that he wrote which concerned his actions relating to the fraud and conspiracy for which he was convicted. *See* Appellant's Ex. 18-A–F; R.E.[2] Tab E. According to Defendant-Appellant, "[t]he only specific evidence that tied [him] to the conspiracy was the testimony of Weston Smith and Bill Owens regarding the March 2002 confirmation letters," without which "the Government would not have proven Defendant Crumpler's guilt beyond a reasonable doubt." Appellant's Br. 23. Appellant claims that these documents would have undermined Smith and Owens' testimony because they "established [Crumpler's] good faith and lack of criminal intent with respect to the confirmation letters by showing that he did not act in concert with the conspirators at HealthSouth." Appellant's Br. 24.

During the evidentiary hearing, Michael A. Plaia, once Senior Vice President of Planning and Development for Source Medical, later Senior Vice President Chief Operating Officer, and a custodian of HealthSouth's records, testified that he recognized the documents in question, verified that Crumpler created them at the time of the audit confirmation process at HealthSouth, and

_____

the close of business on September 30, 1981.

[2]"R.E." stands for Record Excerpts.

5

attested to the fact that Crumpler had knowledge of the events detailed within the documents. He also confirmed that Crumpler created the documents as a part of his regular business practice, one shared by most of HealthSouth's management. *See* Appellant's R.E. Tab D 17–28. Likewise, Larry D. Carr, an accountant with no formal ties to HealthSouth, testified that he recognized the documents, helped Crumpler draft some of them, and believed the contents of the documents to accurately reflect what he knew of the events discussed within them, though this knowledge apparently came from Crumpler himself. *See* Appellant's R.E. Tab D 33, 35–36, 47–49.

The district court ruled the documents inadmissable on several grounds. First, it found Larry Carr unqualified to attest to their authenticity since he did not work for HealthSouth. *See* Appellant's R.E. Tab D 58. It also held Mr. Plaia's testimony inadequate because he "did not testify that it was [Crumpler's] and Source Medical Solutions Incorporated's practice to maintain these notes in the files as a part of the regular course of [its] business" and "[could] not testify that the notes are accurate." Appellant's R.E. Tab D 59–60. The court also declared that "the source of information in the notes is the defendant, who is accused of fraud in the very dealings his writings seek to explain. Thus, the source of the information indicates lack of trustworthiness." Appellant's R.E. Tab D 59–60.

Finally, the court reasoned that the testimony of Carr and Plaia did not sufficiently demonstrate that Crumpler had not prepared the documents in anticipation of criminal or civil litigation. *See* Appellant's R.E. Tab D 61.

Though the district court erred in portions of its analysis, its decision to exclude the documents from evidence was not an abuse of discretion. First, contrary to the court's assertion, the hearing transcript clearly demonstrates that Mr. Plaia testified that creating and maintaining the documents in question was a business practice of HealthSouth management and Crumpler himself. *See* Appellant's R.E. Tab D 22–23. Moreover, that Plaia could not testify to the accuracy of the information contained within the notes is immaterial. *See* *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir. 1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."). However, while it is generally understood that "[t]he bare fact that the man who supervised the making of the records relies on them is no bar to their admission into evidence" as business records, the circumstances of this case arguably warranted departure from this stance. *Lind v. Schenley Indus., Inc.*, 278 F.2d 79, 88 (3d Cir. 1960). Neither Plaia nor Carr could

7

> testify about the initial link in the chain producing the record[s] – that is, whether the circumstances surrounding the origination and compilation of the documents indicate reliability and trustworthiness. In this case, such testimony is particularly necessary because this case revolves around allegations of fraudulent transactions involving financial documents drafted by the very parties who created the documents the defendant now seeks to introduce . . . .

*Petrie*, 302 F.3d at 1288 (quotations & citations omitted); *see also United States v. N.Y. Foreign Trade Zone Operators, Inc.*, 304 F.2d 792, 797 (2d Cir. 1962) (citing *Palmer v. Hoffman*, 318 U.S. 109, 113, 114, 63 S. Ct. 477, 480, 481 (1943)).  The lower court was not clearly erroneous in finding that Crumpler did not satisfy the trustworthiness element of the business records exception and, therefore, could not submit the notes into evidence.

Furthermore, even if the district court erred, the exclusion of the documents would have constituted harmless error.  An examination of the record demonstrates that most of the content in the documents that Crumpler deemed crucial to his defense entered the record through the confirmation letters, his responses to those letters, and the testimony of Daryl Brown.  *See, e.g.*, Trial Tr. ("Tr.") vol. 15, 66–73, 82, Nov. 15, 2005; Tr. vol. 16, 5–9, 15, 44–45, 47–48, Nov. 16, 2005.  Their exclusion therefore minimally prejudiced Defendant-Appellant's case, if at all.  In addition, the testimony of Emery Harris, Bill Owens, Weston Smith, and Kenneth Livesay proved so incriminating that admission of the notes into evidence

8

would not have had a discernable impact on the trial's outcome. *See, e.g.*, Trial Tr. vol. 11, 86, 88, 149, 168, Nov. 8, 2005; Tr. vol. 14, 16–17, Nov. 14, 2005; Tr. vol. 12, 60–65, Nov. 9, 2005; *see also* Tr. vol. 11, 153–55. The district court's decision not to allow Crumpler's notes into evidence is affirmed.

### III. The Questioning of Witnesses at Trial

Defendant-Appellant also objects to the district court's imposition and enforcement of general restrictions on the questioning of witnesses. More specifically, according to Crumpler, the district court violated the Confrontation Clause when it refused to allow him to ask Bill Owens, one of the government's key witnesses, whether in prior judicial proceedings he asserted that he believed himself to be the smartest man in the world.

The Sixth Amendment guarantees a criminal defendant the right "'to be confronted with the witnesses against him'" – a right which includes "the right to conduct reasonable cross-examination." *Olden v. Kentucky*, 488 U.S. 227, 231, 109 S. Ct. 480, 482–83 (1988) (per curium) (quoting U.S. Const. amend. VI.); *accord United States v. Arias-Izquierdo*, 449 F.3d 1168, 1178 (11th Cir. 2006), *cert. denied*, 127 S. Ct. 521 (2006); 127 S. Ct. 996 (2007); 127 S. Ct. 1001 (2007); 127 S. Ct. 1041 (2007). In practice, this guarantee means that "the cross-examiner has traditionally been allowed to impeach . . . the witness," since "the exposure of a

9

witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Olden*, 488 U.S. at 231, 109 S. Ct. at 483 (quotations & citation omitted); *see Arias-Izquierdo*, 449 F.3d at 1178 ("[T]he Confrontation Clause requires a defendant to have some opportunity to show bias on the part of a prosecution witness."). Accordingly, "[a] defendant's confrontation rights are satisfied when the cross-examination permitted exposes the jury to facts sufficient to evaluate the credibility of the witness and enables defense counsel to establish a record from which he properly can argue why the witness is less than reliable." *Arias-Izquierdo*, 449 F.3d at 1178 (quotations & citation omitted). Nevertheless, "[t]rial judges retain wide latitude to impose reasonable limits on cross-examination based on concerns about, among other things, confusion of the issues or interrogation that is repetitive or only marginally relevant." *Id.* (quotations & citation omitted) (brackets in original); *accord Olden*, 488 U.S. at 231, 109 S. Ct. at 483.

If the trial court violated the defendant's right to impeach a witness, this Court must determine

> "whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was *harmless beyond a reasonable doubt*. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to the reviewing courts. These factors include the importance of the witness' testimony in the prosecution's

10

case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."

*Olden*, 488 U.S. at 232–33, 109 S. Ct. at 483–84 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438 (1986)) (emphasis added); *see United States v. Mills*, 138 F.3d 928, 938 (11th Cir. 1998) ("[T]he 'harmless beyond a reasonable doubt standard' already respects the constitutional origin of the right and elevates it over mere statutory or evidence-rule rights."); *Wasko v. Singletary*, 966 F.2d 1377, 1383 (11th Cir. 1992).

## A. The General Guidelines for Questioning Witnesses

Near the commencement of the trial, the district court distributed to parties' counsel a handout with instructions on how to question witnesses throughout the trial. It read:

1. Except when the last sentence of Rule 611(c) is clearly applicable, do <u>not</u> lead on direct. Ask questions in a fashion which does not suggest the answer.

2. On cross-examination, leading questions should be succinct and not <u>loaded</u> or long, rambling statements. The evidence should not be recounted. The question should be a question within itself. Do **not** make a long, rambling, compound <u>statement</u> and then say

"Did you?"
"Isn't that true?"
"Have you?"

11

"Do you agree?"
"Correct?" etc.

Do not argue.

Again, with emphasis:

1. Do **not lead** on direct.

2. On cross, do not lead, ramble, or make long, rambling compound statements followed by:

"Isn't it true," "correct," "do you agree," etc. or other second questions.

Ask succinct, one sentence questions, even when leading.

To do the contrary[] leads to excessive delays. Repeated violations will result in sanctions. Interim violations may result in open court corrections.

Do not make argumentative asides or engage in repartee with opposing counsel.

Appellee's Br. 34; *see* Appellant's Br. 40 n.14. The district court issued these instructions to facilitate the flow of the trial and to avoid unnecessary delays or confusion, and they appear well-tailored to achieve this purpose. None of the listed interrogatory prohibitions inhibited Crumpler from effectively cross-examining the government's witnesses. *See, e.g.*, Tr. vol. 11, 7–8, 10–11, 14–18;

12

Tr. vol. 12, 21–22, 27–28, 34, 43, 55–57, 70–72; Tr. vol. 13, 123–25, 134–35, 138–40, Nov. 10, 2005. The instructions consequently do not fall afoul of the Sixth Amendment.

## B. The Smartest Man in the World

Similarly, no Sixth Amendment violation occurred when the district court refused to allow Crumpler to ask Bill Owens whether he previously stated that he was the "smartest man on earth." Crumpler insists that only this line of questioning could have lead the jury to doubt the veracity of Owens' testimony, specifically (1) Owens' frequent inability to recall facts about which he previously testified, (2) his last-minute recollection of an incriminating conversation with Crumpler that he claims he had despite never mentioning it in any previous interview or investigation, and (3) his supposed inability to understand how to discuss fraudulent activities with Crumpler while wearing a body recorder.

The court correctly held that the proposed line of questioning lacked relevance and, even if it were relevant, was unduly prejudicial to the government. As Crumpler himself concedes, he managed to have Owens testify that he would be sentenced for his convictions three weeks after he appeared in Crumpler's trial. *See* Appellant's Br. 42–43. Though Owens claimed that this timing had no effect on his behavior, the jury easily could have concluded that Owens had motivation to

13

give false testimony against Crumpler in return for a possibly lighter sentence. *See United States v. Lankford*, 955 F.2d 1545, 1548 (11th Cir. 1992) ("The importance of . . . cross-examination does not depend upon whether or not some deal in fact exists between the witness and the government. What counts is whether the witness may be shading his testimony in an effort to please the prosecution.") (citation omitted). Furthermore, a jury would not have missed the striking contrast between Owens' repeated forgetfulness and his wondrous recollection of a never-before-mentioned incriminating conversation. Crumpler could have – and indeed appears to have – exposed Owens' duplicitous motivations for providing testimony without depending on the fact that Owens once fancied himself the "smartest man in the world" be revealed in open court. *See, e.g.*, Tr. vol. 13, 123–25, 134–35, 138–40. *Compare* Tr. vol. 13, 123 ("A [Owens:] I don't know what a perjury conviction is."), *with* 134 ("Q [Counsel:] But you drew the line at perjury? A [Owens:] I did.") *and* 135 ("A [Owens:] I came to the conclusion that to keep the house of cards together, I would have to commit perjury. And that was a line that I was not willing to cross."). *See United States v. King*, 713 F.2d 627, 630 (11th Cir. 1983) (holding that limitation on scope and breadth of cross-examination did not significantly curtail effectiveness of witness' cross-examination because cross-examination was lengthy and extensive). Not only was Crumpler's proposed line

14

of questioning irrelevant to his defense, *see Petrie*, 302 F.3d at 1287; *Wasko*, 966 F.2d at 1381 ("[T]he sixth amendment only protects cross-examination that is *relevant* . . . ."), but exposing Owens' hubris probably would have compelled the jury to disregard Owens' testimony not because of its internal inconsistencies, but because of Owens' unflattering personality. *See King*, 713 F.2d at 631 (noting that Fed. R. Evid. 403 "permits the trial court to exclude evidence otherwise admissible because the 'probative value' of that evidence 'is substantially outweighed by the danger of unfair prejudice.' . . . . The major function of Rule 403 is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect.") (quotations omitted). *See generally Hands*, 184 F.3d at 1326–29. The district court did not err by prohibiting Crumpler from asking Owens whether he styled himself the "smartest man on earth."

## IV. The Use & Application of the Civil Asset Forfeiture Reform Act

Crumpler asserts that the application of CAFRA to the conspiracy proceeds that he obtained before the effective date of the Act violated the *Ex Post Facto* Clause. Even if the Court finds no violation, he contests the jury's verdict of forfeiture based upon his stock options, which set their fair market value at the stock price when he exercised his options rather than when he sold the stock.

15

The application of a forfeiture statute, in this case 18 U.S.C. § 981(a)(1)(C), and whether it violates the *Ex Post Facto* Clause is a question of law, and the court therefore reviews the findings of the district court *de novo*. *See United States v. Hersh*, 297 F.3d 1233, 1244 (11th Cir. 2002). The *Ex Post Facto* Clause "prohibits the enactment of statutes that punish as a crime an act previously committed which was innocent when done." *Id.* "[W]hen a defendant is charged with a conspiracy that continues after the effective date of the statute," however, no violation occurs. *Id.*

The jury in the trial court convicted Crumpler of such a "straddling" conspiracy. Although the conspiracy began prior to the August 23, 2000, date upon which CAFRA became effective, it continued beyond that date through March 2002, rendering all proceeds that Crumpler acquired due to the conspiracy – specifically the stock options that he exercised in 1997 and the bonuses that he received from 1996 through May 2000 – subject to the forfeiture statute. The district court's application of CAFRA to these proceeds thus did not violate the *Ex Post Facto* Clause.

Crumpler further argues that the court improperly valued the proceeds of the stock he fraudulently acquired by treating the date that he exercised his stock options as dispositive. He avers that the district court should have valued the stock

16

at the time he sold it because prior to that event, the stock's value merely constituted unrealized gains. *See* Appellant's Br. 49. Crumpler's argument, however, has no basis in statutory or case law; rather, it appears to derive from capital gains taxation accounting practices. As demonstrated by the statute itself, "[*a*]*ny* property, real or personal, which constitutes or is derived from proceeds traceable to . . . a conspiracy to commit such an offense" is subject to forfeiture. 18 U.S.C. § 981(a)(1)(C) (emphasis added). Congress did not limit the statute's reach to liquid assets or cash. Accordingly, Crumpler need not have sold his stock to render the proceeds subject to forfeiture. *See* 28 U.S.C. § 2461(c) (ordering forfeiture under CAFRA to be exercised as described under 18 U.S.C. § 3554); 18 U.S.C. § 3554 (ordering forfeiture under section to occur in accordance with 18 U.S.C. § 1963); 18 U.S.C. § 1963 (RICO forfeiture statute); *United States v. Conner*, 752 F.2d 566, 575 (11th Cir. 1985) (stating that "[*e*]*very* property interest, including a *right* to profits or proceeds[,] may be described as an interest in something" when applying RICO forfeiture statute) (emphasis added), 576 ("Since the forfeiture is *in personam*, it follows the defendant as a part of the penalty and thus it does not require that the government trace it . . . . It matters not that the government received the identical money which the defendants received as long as the *amount* that was received . . . is known."); *United States v. Simmons*, 154 F.3d

765, 770 (8th Cir. 1998) (noting that under 18 U.S.C. § 1963, "[d]efendants . . . must forfeit any property constituting, or derived from, any proceeds which the person obtained") (defining "proceeds" under RICO forfeiture statute as meaning "gross receipts of the illegal activity"). Moreover, it would be absurd to permit a criminal to mitigate the value of property that he must forfeit by squandering or poorly investing the illegally acquired proceeds, which Crumpler's argument essentially proposes. The district court applied the forfeiture statute appropriately, and its holding is affirmed.

## V. Conclusion

After review and oral argument, and for the reasons outlined above, we affirm the actions of the district court on all matters contested by Defendant-Appellant.

**AFFIRMED.**