[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14545
Non-Argument Calendar
_____

D.C. Docket No. 1:14-cv-02581-CC

MARLINA CALHOUN,

Plaintiff-Appellant,

versus

WALMART STORES EAST, LP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(June 16, 2020)

Before WILSON, JORDAN, and ANDERSON, Circuit Judges.

PER CURIAM:

Marlina Calhoun, proceeding *pro se*, appeals the district court's entry of final judgment following a jury verdict in favor of Walmart Stores East, LP in her premises liability action against Walmart. She also appeals the district court's denial of her motions for a new trial and for judgment as a matter of law. After careful review of the record and the parties' briefs, we affirm.

## I

In 2014, Ms. Calhoun sued Walmart Stores, Inc. for negligence in a Georgia state court. She alleged that she sustained injuries to her lower back, leg, neck, brain, and wrists after a Walmart employee negligently hit her with a line of shopping carts, which he was pushing using a mechanized device. Walmart Stores, Inc. removed the action to the U.S. District Court for the Northern District of Georgia based on diversity of citizenship under 28 U.S.C. § 1332, and substituted Walmart Stores, East LP as the proper defendant.[1]

The district court granted partial summary judgment in favor of Walmart on Ms. Calhoun's claims that she suffered wrist, neck, and brain injuries, because there was no evidence that the incident caused these injuries. Ms. Calhoun's claims of injury to her leg and lower back proceeded to trial.

---

[1] Ms. Calhoun was initially represented by counsel, but she proceeded *pro se* after firing four separate attorneys during the course of the district court proceedings.

2

At trial, Ms. Calhoun presented evidence demonstrating that on August 4, 2012, she went with her daughter and grandson to shop at a Walmart store. While Ms. Calhoun was putting her grandson in the basket of a shopping cart, she was hit from behind with another cart. Ms. Calhoun testified that she was hit with "force," causing her to "thrust forward." D.E. 171 at 62–63.

Ms. Calhoun further testified that as a result of this incident, she suffered back and leg pain. She testified that because of this pain, she is "not able to work," "not able to sit long," "not able to walk long," and "need[s] [her] cane." D.E. 171 at 64. She also testified that she could no longer work as a model or an actress as a result of this incident.

During cross-examination, Walmart impeached Ms. Calhoun's testimony with printouts of her Facebook posts, which showed that after the incident, she described herself on Facebook as a "certified personal trainer," posted a link to her personal trainer website saying "check me out, personal trainer," and posted about attending acting classes and casting calls. Ms. Calhoun responded that her Facebook posts "were made up" and she was "actually bedridden at that time." *Id.* at 78–79.

Sterling Jackson, the employee who was pushing the carts at the time of the incident, testified on behalf of Walmart. He testified that as a cart pusher, he would attach carts to a "cart mule" and use the mule to push the carts back into the store's vestibule. At the time of the incident, he was returning a stack of five to seven carts

3

to the vestibule on "turtle" speed, which means the carts were moving slowly.  He saw Ms. Calhoun standing in the vestibule and yelled twice for her to move.  She did not move, and the carts "soft[ly] tap[ped]" her.  D.E. 171 at 107.

Walmart also presented a video of the incident captured by the store's surveillance system.  According to Mr. Jackson, the video showed "[j]ust a slow tap movement."  D.E. 171 at 111.  Mr. Jackson testified that the video accurately and completely depicted the incident.

Ms. Calhoun was treated by her long-term physician, Dr. Sherell Vicks, as well as by Dr. Augustine Conduah, an orthopedic specialist.  Ms. Calhoun intended to present both doctors' testimony at trial, but she did not subpoena either doctor and they were unavailable to testify.  Although both doctors were deposed, Ms. Calhoun did not designate any portion of their deposition testimony to be read at trial in the pretrial order.

Walmart, however, read designated portions of Dr. Conduah's deposition testimony into the record at trial.  Namely, Walmart read testimony in which Dr. Conduah stated that, after watching the video of the incident at Walmart, he could not state to a reasonable degree of medical certainty that the incident caused Ms. Calhoun's back pain.  Dr. Conduah further testified that in March of 2015, he diagnosed Ms. Calhoun with osteoarthritis of her right knee, which is a degenerative condition from wear and tear on the knee joint over time, and a few months later,

4

she had inflammation of both knees—which was most likely secondary to the osteoarthritis.  Dr. Conduah testified that he could not state to a reasonable degree of medical certainty that her knee pain was caused by the Walmart incident either.  To summarize his testimony, Walmart's counsel asked Dr. Conduah: "In summary, Doctor, up until today's date, on all the occasions you've seen her, you've seen her for . . . [l]umbar radiculitis or lumbar or thoracic radiculitis, bilateral carpal tunnel syndrome, and bilateral osteoarthritis to the knees, none of which you associate with this incident we've seen today on the video; is that correct?"  D.E. 172 at 25.  Dr. Conduah answered: "Correct. Not by what—not based on what I witnessed on the video, correct."  *Id.*

The jury returned a verdict in favor of Walmart.  After the trial, Ms. Calhoun moved for judgment as a matter of law and for a new trial.  The district court denied both motions.

This appeal followed.

## II

Liberally construing Ms. Calhoun's *pro se* briefs, as we must, Ms. Calhoun challenges several of the district court's evidentiary rulings at trial, as well as the district court's denial of her post-trial motions.  *See Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1329 (11th Cir. 2010) ("We construe *pro se* filings . . . liberally.").  We begin by reviewing the alleged trial errors.

5

## A

First, Ms. Calhoun contends that the district court erred by prohibiting her mother from testifying about the contents of Dr. Vicks' deposition testimony. Second, she argues that the district court improperly excluded her medical records. Third, she asserts that the district court erred by permitting Walmart to impeach her with her Facebook posts. We review the district court's evidentiary rulings "only for a clear abuse of discretion[.]" *Taylor v. Mentor Worldwide LLC*, 940 F.3d 582, 591 (11th Cir. 2019) (citation and internal quotation marks omitted). We address each of Ms. Calhoun's contentions below.

## 1

Because Dr. Vicks was unavailable to testify at trial, Ms. Calhoun requested that her mother be permitted to testify about the contents of Dr. Vicks' deposition testimony, as her mother was present for the deposition. The district court denied this request. On appeal, Ms. Calhoun asserts that her mother should have been allowed to testify about Dr. Vicks' statements that she did not have any injuries prior to the incident and that Walmart was responsible for her injuries. We affirm the district court's decision to exclude this testimony, as it constitutes inadmissible hearsay. *See* Fed. R. Evid. 802.

"The Federal Rules of Evidence generally prohibit the admission of hearsay statements at trial." *United States v. Santos*, 947 F.3d 711, 723 (11th Cir. 2020)

6

(citing Fed. R. Evid. 802).  "Hearsay is a statement, other than one made by a declarant while testifying at trial, offered in evidence to prove the truth of the matter asserted."  *United States v. Rivera*, 780 F.3d 1084, 1092 (11th Cir. 2015) (citing Fed. R. Evid. 801(c)).  Dr. Vicks' out-of-court statements regarding Ms. Calhoun's injuries—which Ms. Calhoun sought to offer for their truth—fall squarely within this definition.  *See id.*

Ms. Calhoun argues, however, that Dr. Vicks' statements fall within two hearsay exceptions: (1) the Rule 803(3) exception for statements about the declarant's then-existing mental, emotional or physical conditions; and (2) the Rule 803(4) exception for statements that are made for medical diagnosis or treatment. Rule 803(3) provides, in pertinent part, that "[a] statement of the declarant's then-existing . . . physical condition (such as mental feeling, pain, or bodily health)" is not excluded by the hearsay rule.  Rule 803(4) excludes from the hearsay rule "[a] statement that: (A) is made for—and is reasonably pertinent to—medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause."

Rule 803(3) does not apply here because Ms. Calhoun sought to admit Dr. Vicks' statements to prove that Walmart caused her injuries—not to establish her state of mind.  Indeed, Dr. Vicks is the declarant in the statements at issue, and her state of mind was not relevant at trial.  *See T. Harris Young & Assocs., Inc. v.*

7

*Marquette Elecs., Inc.*, 931 F.2d 816, 828 (11th Cir. 1991) ("Before a statement can be admitted under Rule 803(3) to show the declarant's then-existing state of mind, the declarant's state of mind must be a relevant issue.").

Rule 803(4) likewise does not apply because the out-of-court statements that Ms. Calhoun sought to introduce were from Dr. Vicks' deposition testimony—they were not Ms. Calhoun's description of her injuries to Dr. Vicks when she was seeking treatment. As explained in the committee notes, the rationale for Rule 803(4) is that statements "made to a physician for purposes of diagnosis and treatment" are more reliable "in view of the patient's strong motivation to be truthful." Fed. R. Evid. 803(4) advisory committee's notes. That rationale is inapplicable to statements Dr. Vicks made during her deposition. Accordingly, the district court properly precluded Ms. Calhoun's mother from testifying about Dr. Vicks' out-of-court statements.

**2**

Ms. Calhoun next contends that the district court erred in excluding her medical bills and records. The district court excluded Ms. Calhoun's medical bills and records for two reasons: (1) some of the records were either incomplete or altered with Ms. Calhoun's marking or notes; and (2) none of the bills or records were authenticated. This was not an abuse of discretion.

8

Rule 901 provides that to authenticate or identify an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), such as "[t]estimony that an item is what it is claimed to be," Fed. R. Evid. 901(b)(1). Though Rule 901 "require[s] only enough evidence that a jury could have reasonably concluded that a document was authentic," *United States v. Williams*, 865 F.3d 1328, 1343 (11th Cir. 2017) (citation and internal quotation marks omitted), Ms. Calhoun provided no evidence whatsoever to demonstrate that the documents were what she claimed they were—namely, records of services for injuries related to the incident at Walmart.

We also note that the medical bills and records constituted hearsay to the extent that they contained doctors' out-of-court statements which Ms. Calhoun offered for their truth. *See* Fed. R. Evid. 801(c). Ms. Calhoun could not show that they qualified under the business records exception in Rule 803(6) because she did not present any witness who was "knowledgeable about the procedures used to create" the records. *In Re Int'l Management Assocs., LLC*, 781 F.3d 1262, 1268 (11th Cir. 2015); *United States v. Garnett*, 122 F.3d 1016, 1018–19 (11th Cir. 1997) ("Fed. R. Evid. 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized.").

The district court therefore did not abuse its discretion in excluding Ms. Calhoun's medical bills and records. *Cf. Belber v. Lipson*, 905 F.2d 549, 551–52

9

(1st Cir. 1990) (holding that the district court did not abuse its discretion in excluding medical records where there was no evidence authenticating the records under Rule 901 and no testimony establishing that the documents constituted business records under Rule 803(6)).

### 3

Ms. Calhoun also argues that the district court erred by permitting Walmart to impeach her with her Facebook posts reflecting that she worked as a personal trainer, model, and actress after the incident.  She asserts that Walmart did not disclose this evidence prior to trial, and that the use of her Facebook posts violates "copyright laws."  Both arguments lack merit.

First, Federal Rule of Civil Procedure 26 does not require pre-trial disclosure of evidence that may be used at trial "solely for impeachment."  Fed. R. Civ. P. 26(a)(3).  Walmart was thus not required to disclose Ms. Calhoun's Facebook posts prior to trial, because it used this evidence solely for the purpose of impeaching her testimony that she was unable to work after the incident.

Second, Ms. Calhoun did not raise her argument that Walmart's use of her Facebook posts violated copyright laws before the district court.  She therefore waived this contention.  *See FDIC v. Verex Assur., Inc.*, 3 F.3d 391, 395 (11th Cir. 1993) ("[A]ppellate courts generally will not consider an issue or theory that was not raised in the district court.").  We nevertheless note that copyright law does not

protect Ms. Calhoun's Facebook posts about her activities.  *See, e.g.*, *Feist Publ'ns, Inc. v. Rural Telephone Serv. Co., Inc.*, 499 U.S. 340, 350 (1991) (explaining that copyright does not apply to "facts, or materials in the public domain" but instead "is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality") (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547–48 (1985)).

## B

We now turn to the district court's denial of Ms. Calhoun's post-trial motions.

## 1

Under Federal Rule of Civil Procedure 50(a), a motion for judgment as a matter of law must be made "before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  The motion may be renewed after trial.  *See* Fed. R. Civ. P. 50(b).  If a party fails to assert a Rule 50(a) motion before the case is submitted to the jury, "a subsequent motion for jnov can be granted only if *plain error* can be proven." *McGinnis v. American Home Morg. Servicing, Inc.*, 817 F.3d 1241, 1260 n.13 (11th Cir. 2016) (citations and internal quotation marks omitted).  In such a case, on appeal "our inquiry is limited to whether there was *any* evidence to support the jury's verdict, irrespective of its sufficiency, or whether plain error was noted which, if not noticed, would result in a manifest miscarriage of justice."  *Sims' Crane Serv., Inc.*

11

*v. Ideal Steel Prods.*, 800 F.2d 1553, 1557 (11th Cir. 1986) (citation and internal quotation marks omitted).

Ms. Calhoun did not move for judgment as a matter of law before the case was submitted to the jury. Although Ms. Calhoun argues that she asked the court reporter to ask the judge to return to the courtroom after the jury retired for deliberations so she could make such a motion, that still would not have been timely because the case was already submitted to the jury. *See* Fed. R. Civ. P. 50(a)(2). Thus, we review only for plain error. *See Sims' Crane Serv.*, 800 F.2d at 1557.

The district court did not plainly err in denying Ms. Calhoun's motion for judgment as a matter of law. The jury's verdict was supported by evidence, including Mr. Jackson's testimony that the shopping cart only softly tapped Ms. Calhoun and Walmart's surveillance video footage which was consistent with Mr. Jackson's testimony.

**2**

Under Federal Rule of Civil Procedure 59(a), "a district court may, in its discretion, grant a new trial if in [the court's] opinion, the verdict is against the clear weight of the evidence . . . or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of verdict." *McGinnis*, 817 F.3d at 1254 (citations and internal quotation marks omitted). We

12

review the district court's denial of a motion for a new trial for abuse of discretion. *See Taylor*, 940 F.3d at 594.

The district court did not abuse its discretion in denying Ms. Calhoun's motion for a new trial, as the jury's verdict was not against the great weight of the evidence. As noted, Mr. Jackson testified that the shopping cart only softly tapped Ms. Calhoun, and the surveillance video was consistent with his testimony. The jury was free to credit that evidence over Ms. Calhoun's and her daughter's accounts of the incident. *See generally Rosenfield v. Wellington Leisure Prods., Inc.*, 827 F.2d 1493, 1498 (11th Cir. 1987) (explaining that the jury is "called upon to make credibility determinations and to weigh the evidence" and is "free to believe or disbelieve portions of testimony"). Indeed, the jury may have found Ms. Calhoun's and her daughter's testimony less persuasive because Ms. Calhoun was impeached by her Facebook posts, as discussed earlier, and her daughter was impeached by inconsistent statements. In addition, there was no evidence that the incident caused Ms. Calhoun's back or leg pain, and Dr. Conduah testified by deposition that he could not state to a reasonable degree of medical certainty that the incident caused Ms. Calhoun's back or knee pain. In view of this evidence, the district court properly denied Ms. Calhoun's motion for a new trial.[2]

---

[2] Ms. Calhoun makes passing reference to numerous other issues in her initial brief. To the extent that she sought to raise any other issues on appeal, she abandoned those claims by failing to properly brief them. *See, e.g.*, *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir.

13

## III

For the foregoing reasons, we affirm.

**AFFIRMED.**

---

2014) ("A party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it, 'for instance by devoting a discrete section of his argument to those claims.'") (citation omitted); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough, and the failure to make arguments and cite authorities in support of an issue waives it."). "While we read briefs filed by *pro se* litigants liberally . . . , issues not briefed on appeal by a *pro se* litigant are deemed abandoned." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Ms. Calhoun thus abandoned any issues not addressed here.

14