Paul C. ALLEN and Marjorie Allen,
Plaintiffs-Appellees,

v.

SAFECO INSURANCE COMPANY OF
AMERICA, Defendant-Appellant.

No. 84–3865.

United States Court of Appeals,
Eleventh Circuit.

Feb. 24, 1986.

Ronald E. Cabaniss, Sharon Lee Stedman, Orlando, Fla., Bob G. Freeman, Jr., Tampa, Fla., for defendant-appellant.

Rodney D. McGalliard, Gainesville, Fla., for plaintiffs-appellees.

Before GODBOLD, Chief Judge, KRAVITCH, Circuit Judge, and SIMPSON, Senior Circuit Judge.

GODBOLD, Chief Judge:

Shortly after their home was destroyed by fire, Paul and Marjorie Allen filed a claim for their loss pursuant to an insurance policy issued by Safeco Insurance Company. Safeco denied liability. The Allens filed suit in the Florida state court seeking payment under the policy. The case was removed to the U.S. District Court, N.D. Florida.

Safeco sued in the federal court, seeking declaratory relief as to its duties to the Allens under the policy, and the cases were consolidated for trial. In both cases Safeco raised arson as a defense. Later Safeco paid two mortgagees for their security interests in the property and took assignments of their security interests.

The jury returned a verdict finding that the fire was not intentionally set and setting damages of $389,000.[1] In a post-trial order the court held that Safeco was entitled to a set-off of $187,433.09, the amount it had paid the mortgagees, and that the Allens were entitled to prejudgment interest and attorney's fees.

Safeco appeals, contending (1) that the evidence did not support the verdict; (2) error in admitting hearsay evidence; (3) error in permitting the Allens to use in cross-examination of a Safeco expert magazine articles not established to be authoritative; (4) error in computing the award of prejudgment interest, and (5) error in the denial of Safeco's motion for directed verdict on the claim for loss of use of the premises.

### 1. Sufficiency of the evidence

There was sufficient evidence to support the jury's finding that the fire was not intentionally set. Although Safeco presented expert witnesses who concluded that a flammable liquid had been used to set the fire, the jury could have believed the testimony of state fire marshall Jerome Gant that there was no evidence of an accelerant. Gant witnessed the fire and

---

1. The jury specifically awarded damages for the following: $279,000 for the dwelling, $77,000 for personal property, $24,000 for loss of use, $5,000 for debris removal, and $4,000 for trees.

later returned to the premises to conduct an investigation of the debris.

### 2. *Evidentiary rulings*

██ Safeco objected to Gant's reliance on a report he received from the Tallahassee Law Enforcement Department, a state crime lab that conducted tests on samples of the debris left on the Allens' property.[2] Gant's testimony is covered by the business records exception to the hearsay rule. Fed.R.Evid. 803(6) excepts from the hearsay rule:

> **Records of regularly conducted activity.** A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Although Gant did not prepare the lab report, his testimony provided sufficient foundation to admit the test results into evidence. His testimony established that the Tallahassee Law Enforcement Department regularly analyzed samples sent from his office. The report and the test results

in the report were issued by a state agency in the regular course of its business, and there was no indication that they lacked trustworthiness. Under Fed.R.Evid. 803(6), "the person who actually prepared the documents need not have testified so long as other circumstantial evidence and testimony suggest their trustworthiness...." *U.S. v. Parker*, 749 F.2d 628, 633 (11th Cir.1984).

The trial court has broad discretion in ascertaining the admissibility of business records, and its ruling should be disturbed only when that discretion is abused. *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980). The district court did not abuse its discretion.

### 3. *Use of magazine articles*

██ During cross-examination of Walter Godfrey, Safeco's expert, counsel read to Godfrey statements from two articles published in the magazine *Fire Arson Investigator*. Safeco objected to the use of the first article, by Dennis Canfield, but did not object to the second. Therefore, we consider only the first article.[3]

Godfrey established that the periodical in which the article appeared was authoritative by testifying that it was one of the sources he used in keeping up to date on fire scene investigation and analysis. He also testified that articles in the *Fire Arson Investigator* were generally considered "somewhat" authoritative. Godfrey's testimony also established the authoritativeness of the first article by acknowledging the good reputation enjoyed by the Forensic Science Department of the University of Mississippi, which Canfield, the author of the article, directs.

---

**2.** Both Safeco and the Allens state in their briefs that Gant was permitted to testify from his official report, which included the report of the state crime lab. Safeco argues that this testimony was double hearsay. However, Gant did not refer to his report until Safeco introduced it into evidence on cross-examination. Therefore, his statements on direct presented no double hearsay problem.

**3.** Counsel for the Allens produced two issues of the journal. Safeco objected to their introduc-

tion, counsel for the Allens stated he did not intend to introduce them, and the court noted: "You can use them if he recognizes them as authoritative."

When plaintiff's counsel began to read from the first article, there was an objection based on lack of authoritativeness (T. vol. 6, p. 162).

Later counsel read from, and questioned Godfrey about, an article in the second journal. There was no objection.

Godfrey's testimony provided a sufficient foundation to permit counsel to read to the jury statements from the article. Fed.R. Evid. 803(18) excepts from the hearsay rule

**Learned Treatises.** To the extent called to the attention of an expert witness upon cross-examination or relied upon by him in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice. If admitted, the statements may be read into evidence but may not be received as exhibits.

The Notes of the Advisory Committee counsel a liberal interpretation of Rule 803(18), favoring admissibility:

The relevance of the use of treatises on cross-examination is evident. This use of treatises has been the subject of varied views. The most restrictive position is that the witness must have stated expressly on direct his reliance upon the treatise. A slightly more liberal approach still insists upon reliance but allows it to be developed on cross-examination. Further relaxation dispenses with reliance but requires recognition as an authority by the witness, developable on cross-examination. The greatest liberality is found in decisions allowing use of the treatise on cross-examination when its status as an authority is established by any means.... [Rule 803(18)] is hinged upon this last position....

The rule does not require that the witness rely upon or recognize the treatise as authoritative, thus avoiding the possibility that the expert may at the outset block cross-examination by refusing to concede reliance or authoritativeness....

Fed.R.Evid. 803 Advisory Committee Note.

The district court did not err in permitting counsel to read from the articles.

### 4. *Prejudgment interest*

■ The district court found that the Allens were entitled to prejudgment interest from the date when payment was due under the policy and awarded interest computed as of 30 days after the Allens submitted their proof of loss. The insurance policy entered into evidence provides that loss is payable 30 days after (1) the insurance company reaches an agreement with the insured, or (b) there is an entry of a final judgment, or (c) there is a filing of an appraisal award with the insurance company. Conditions (a) and (c) were not met. Therefore, payment was due 30 days after entry of the final judgment.

Under Florida law it is proper to allow interest at the legal rate from the date the debt was due. *Cioffe v. Morris*, 676 F.2d 539 (11th Cir.1982). In actions ex contractu interest is allowable from the time the debt was due under the contract on which the indebtedness was based. *Creative Property Management, Inc. v. Gaines*, 416 So.2d 1266 (Fla. 5th DCA 1982). Therefore the Allens are entitled to interest running from 30 days after the date of the final judgment rather than from the earlier date used by the court.

### 5. *Loss of use*

The jury awarded $24,000 to the Allens for the loss of use of their home. The loss of use coverage covers, at the insured's option, either additional living expenses or fair rental value. Mr. Allen testified at trial to fair rental value. By both motion for directed verdict and objection to proposed jury instructions Safeco insisted that the undisputed evidence showed the Allens had never filed a proof of claim for loss of use as required. The policy requires submission within 60 days after request of a signed sworn statement of loss setting forth "receipts for additional living expenses incurred and records supporting the fair rental value loss." The Allens supplied neither receipts for living expenses nor records supporting fair rental value.

■ The Allens contend that the motion for directed verdict, which referred to failure to file proof for loss of use, did not address failure to furnish records supporting "fair rental value." Safeco's motion covered the subject matter of failure to

submit a required statement of loss for loss of use. The Allens chose the fair rental value option under loss of use coverage. They did not submit records supporting that option, therefore, they did not comply with the policy requirements. Safeco's directed verdict should have been granted.

## CONCLUSION

We VACATE the judgment for damages awarded for prejudgment interest and loss of use. The judgment is otherwise AFFIRMED. The case is REMANDED with directions to award interest beginning 30 days after the date of the final judgment.