[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-13423
Non-Argument Calendar

_____

D.C. Docket Nos. 1:13-cv-02067-RWS; 08-bkc-06215-PWB

In Re: INTERNATIONAL MANAGEMENT ASSOCIATES, LLC,

Debtor.

_____

GEORGE RUSSELL CURTIS, SR. LIVING TRUST,
GEORGE RUSSELL CURTIS, SR.,
BETTY CURTIS,

Defendants-Appellants,

versus

WILLIAM F. PERKINS,
in his Capacity as Chapter 11 Trustee of International
Management Associates, LLC and its affiliated debtors,

Plaintiff-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(March 19, 2015)

Before ED CARNES, Chief Judge, HULL and ROSENBAUM, Circuit Judges.

PER CURIAM:

George Russell Curtis, Betty Curtis, and the George Russell Curtis, Sr., Living Trust, who are the defendants in this adversary proceeding, appeal the bankruptcy court's judgment, which allowed the bankruptcy trustee to avoid a $200,000 transfer from the debtor, International Management Associates (IMA), to the defendants. See 11 U.S.C. §§ 544(b), 547(b), 548(a)(1)(A)–(B).

## I.

Kirk Wright ran IMA and its affiliates, which he claimed were hedge funds but which looked like a Ponzi scheme. The defendants invested $500,000 with IMA from 2002 to 2006. Over that same period, they received $621,000 in disbursements from IMA. The last of those disbursements took place on January 10, 2006, when IMA transferred $200,000 to the defendants.

On March 16, 2006, the bankruptcy trustee, whom a Georgia state court had appointed as IMA's receiver,[1] filed a voluntary petition to place IMA in bankruptcy. As part of that bankruptcy action, the trustee filed a series of adversary proceedings against IMA's investors, including the defendants. In those proceedings, he sought to avoid transfers that IMA had made to those investors

---

[1] In a later action brought by the Securities and Exchange Commission, the bankruptcy trustee also became IMA's federally appointed receiver.

shortly before being placed in bankruptcy.  The bankruptcy court consolidated all those proceedings for the sole purpose of determining whether IMA was a Ponzi scheme.  It held a consolidated hearing to take evidence on that question.

The trustee was the only witness at that hearing.  He gave few details about the state of IMA's finances at the time he took control of it.  He focused almost entirely on laying the foundation for his documentary evidence.  He testified how he had seized IMA's files and, using his training as a certified fraud examiner, had "reconstructed" them to verify their accuracy.

According to the trustee's testimony, the day after the state court appointed him as receiver, he took possession of IMA's offices and their contents, most importantly IMA's documents.  He immediately changed the locks and removed any means of remotely accessing IMA's electronic documents.  He then worked with the FBI and the SEC to canvass national financial institutions for accounts in the name of either IMA or Wright.  He subpoenaed the records of those institutions where he found IMA's accounts.  He interviewed IMA's investors.  With the help of an international accounting firm, he cross-checked IMA's own documents with those kept by the financial institutions and the investors.  He also interviewed IMA's principals and its employees, including its office manager.  From them he learned about the procedures used to create IMA's documents.  Satisfied as to their reliability, the trustee prepared detailed summaries of them.

3

At the bankruptcy court's consolidated hearing, the trustee offered those summaries into evidence to prove the state of IMA's finances up to the start of this bankruptcy action. See Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."). He did not offer into evidence the documents underlying those Rule 1006 summaries. The defendants objected to the introduction of the summaries and argued that the underlying documents had not been authenticated and were hearsay not within any hearsay exception. See Fed. R. Evid. 802, 901. The bankruptcy court overruled that objection, specifically concluding that the underlying documents would be admissible under the residual hearsay exception. See Fed. R. Evid. 807.

Based on the evidence presented at that consolidated hearing, the bankruptcy court found that IMA was a Ponzi scheme. It then severed the consolidated adversary proceedings and used its Ponzi scheme finding and the trustee's Rule 1006 summaries to adjudicate them individually. In this adversary proceeding, the trustee and the defendants stipulated to three facts: (1) that the defendants had invested $500,000 with IMA; (2) that IMA had disbursed a total of $621,000 to the defendants; and (3) that IMA's last disbursement to them was the $200,000 transfer on January 10, 2006, 65 days before this bankruptcy petition was filed. Based on those stipulated facts, the trustee's Rule 1006 summaries, and the Ponzi

scheme finding, the bankruptcy court entered a judgment allowing the trustee to avoid the $200,000 transfer from IMA to the defendants. The defendants appealed that judgment to the district court, which affirmed it. They now appeal it to us.

## II.

After the district court reviews a bankruptcy court's judgment, we review that judgment again, independently of the district court. Senior Transeastern Lenders v. Official Comm. of Unsecured Creditors (In re TOUSA, Inc.), 680 F.3d 1298, 1310 (11th Cir. 2012). We review the bankruptcy court's evidentiary rulings, here its decision to admit the trustee's Rule 1006 summaries, only for an abuse of discretion. Walden v. Walker (In re Walker), 515 F.3d 1204, 1213 (11th Cir. 2008); United States v. Malol, 476 F.3d 1283, 1291 (11th Cir. 2007). Even if the court did commit an abuse of discretion, we will overturn its evidentiary ruling only if the defendants have shown that the ruling had a "substantial prejudicial effect." Adams v. Austal, U.S.A., L.L.C., 754 F.3d 1240, 1248 (11th Cir. 2014) (quotation marks omitted).

The bankruptcy court admitted the trustee's summaries under Federal Rule of Evidence 1006, which allows a party to "use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." The only textual limit placed on the use of summaries is that "[t]he proponent must make the originals or duplicates available

for examination or copying, or both, by other parties at a reasonable time and place." Fed. R. Evid. 1006. The rule does not require the proponent to introduce the underlying documents into evidence, and the trustee did not. But we have held that it is necessary to establish that the underlying documents would have been admissible if the proponent had sought their admission. Peat, Inc. v. Vanguard Research, Inc., 378 F.3d 1154, 1160 (11th Cir. 2004).

The defendants objected to the admission of the trustee's Rule 1006 summaries on the ground that the underlying documents were inadmissible hearsay. Because the trustee used the summaries based on the underlying documents to prove the truth of the information contained in those documents, they are hearsay and were not admissible unless covered by a hearsay exception. Fed. R. Evid. 801(c), 802. The bankruptcy court concluded that the underlying documents were admissible under the residual exception to the rule against hearsay. See Fed. R. Evid. 807.

The trustee contends that, even if those documents were not admissible under that hearsay exception, they were admissible under the hearsay exception for "business records." See Fed. R. Evid. 803(6). As the appellee, the trustee may raise any argument for affirming the bankruptcy court's judgment as long as it is supported by the record — even arguments that are inconsistent with the bankruptcy court's reasoning. See Hamilton v. Southland Christian Sch., Inc., 680

F.3d 1316, 1318 (11th Cir. 2012); see also Gwynn v. Walker (In re Walker), 532 F.3d 1304, 1308 (11th Cir. 2008) ("We may affirm on any legal ground supported by the record.").  And we must disregard any evidentiary errors and affirm the bankruptcy court's judgment as long as those errors did not have a substantial prejudicial effect.  Adams, 754 F.3d at 1248.  Assuming the bankruptcy court erroneously applied the residual hearsay exception, that ruling did not have a substantial prejudicial effect if the underlying documents were admissible under the business records exception.  See United States v. Williams, 837 F.2d 1009, 1013–14 (11th Cir. 1988) (affirming a judgment despite the erroneous admission of a statement under a hearsay exception because the statement was admissible as substantive evidence under another rule of evidence).  If the underlying documents were admissible under the business records exception, we must affirm.

The trustee's testimony needed to show two things to establish that the business records exception applied.  United States v. Dreer, 740 F.2d 18, 19–20 (11th Cir. 1984).  First, it needed to show that the underlying documents are authentic.  Id. at 20; see Fed. R. Evid. 901–902.  Second, it needed to show that they meet the requirements of Rule 803(6).  Dreer, 740 F.2d at 20.  Whether the trustee's Rule 1006 summaries were admissible depends on whether he made both of those showings for the underlying documents establishing their admissibility under Rule 803(6).  See Peat, Inc., 378 F.3d at 1160–61; see also United States v.

Johnson, 594 F.2d 1253, 1257 (9th Cir. 1979) ("[T]he proponent of a summary must demonstrate the admissibility of the underlying writings or records summarized, as a condition precedent to introduction of the summary into evidence under Rule 1006.") (emphasis added).

A.

The trustee met his authentication burden, which is a light one. See United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir. 2012) (refusing to disturb an authentication decision unless there is "no competent evidence in the record to support it") (quotation marks omitted). Had he sought to admit the underlying documents, the trustee would have needed to establish only a prima facie case that they are what he claims they are. See Fed. R. Evid. 901(a); United States v. Caldwell, 776 F.2d 989, 1001–02 (11th Cir. 1985) (holding that Rule 901 required only enough evidence that a jury "could have reasonably concluded" that a document was authentic). The trustee could meet his burden with circumstantial evidence of the authenticity of the underlying documents through the testimony of a witness knowledgeable about them. See Fed. R. Evid. 901(b)(1); Caldwell, 776 F.2d at 1002–03. Once that prima facie showing of authenticity was made, the ultimate question of the authenticity of the documents would have been left to the factfinder, here the bankruptcy court. See Caldwell, 776 F.2d at 1002.

The trustee testified that all of the underlying documents were found at IMA's offices and that the information in those documents substantially matched the records kept by the financial institutions and clients with which IMA had transacted. If the bankruptcy court believed that testimony, it could have reasonably concluded that the underlying documents were a true and authentic record of IMA's business. That is all Rule 901 required. See Lebowitz, 676 F.3d at 1009; Caldwell, 776 F.2d at 1001–02.

### B.

An authenticated document is admissible as a business record if it "was made at or near the time by — or from information transmitted by — someone with knowledge"; if it "was kept in the course of a regularly conducted activity"; and if "making the record was a regular practice of that activity." Fed. R. Evid. 803(6)(A)–(C). The trustee could establish those requirements through "the testimony of the custodian or another qualified witness," or by means of an out-of-court certification procedure established by rule or statute. Id. 803(6)(D). Even if the underlying documents satisfied those three requirements, they would still be inadmissible if either their "source of information" or their "method or circumstances of preparation indicate a lack of trustworthiness." Id. 803(6)(E).

The trustee testified in the bankruptcy court about how the underlying documents satisfied the requirements of the business records exception. As IMA's

9

court-appointed receiver, the trustee was the "custodian" of the underlying documents. See id. 803(6)(D); Warfield v. Byron, 436 F.3d 551, 559 (5th Cir. 2006) (holding that the federally appointed receiver for a Ponzi scheme qualified as the scheme's "record custodian"). He testified about his investigation into the provenance and reliability of the documents he seized at IMA's office. He testified about his interview with one of IMA's principals, during which he learned that the office routinely created those documents based on its interactions with financial institutions and IMA's clients. And he testified about his reconciliation of the documents with corresponding files held by those financial institutions and clients. His testimony evidences that someone with personal knowledge created the documents. We have no problem concluding that the underlying documents were routinely made as part of a regularly conducted activity, near the time of that activity, by someone with personal knowledge of their contents. See Fed. R. Evid. 803(6)(A)–(C). They were admissible under the business records exception.

Despite that, the defendants contend that the trustee's testimony cannot establish the requirements of the business records exception. They argue that his testimony is itself inadmissible because it is based on hearsay — his interviews with IMA's principals and employees. That argument misunderstands two principles.

10

First, it misunderstands the nature of admissibility determinations.  "The court must decide any preliminary question about whether . . . evidence is admissible.  In so deciding, the court is not bound by evidence rules, except those on privilege."  Fed. R. Evid. 104(a); see id. 1101(d)(1) ("These rules — except for those on privilege — do not apply to . . . the court's determination, under Rule 104(a), on a preliminary question of fact governing admissibility . . . .").  As a result, when deciding whether an exception to the rule against hearsay applies, the court may consider any unprivileged evidence — even hearsay.  See United States v. Byrom, 910 F.2d 725, 734–35 (11th Cir. 1990).  The trustee's testimony establishing the foundation for the business records exception was based on hearsay.  For instance, he had no personal knowledge of IMA's recordkeeping practices other than what he gleaned from his interview with one of IMA's principals.  However, the bankruptcy court was free to consider that and any other hearsay when determining whether the underlying documents were admissible under the business records exception.  See Fed. R. Evid. 104(a); cf. United States v. Franco, 874 F.2d 1136, 1139 (7th Cir. 1989) ("When making preliminary factual inquiries about the admissibility of evidence under a hearsay exception, the district court must base its findings on the preponderance of the evidence.  That evidence, however, may include hearsay and other evidence normally inadmissible at trial.") (citation omitted).

11

Second, the defendants' argument misunderstands the nature of the testimony that the business records exception requires. See Fed. R. Evid. 803(6)(D). Someone who is knowledgeable about the procedures used to create the alleged business records must testify. See United States v. Garnett, 122 F.3d 1016, 1018–19 (11th Cir. 1997) ("[Rule] 803(6) requires the testimony of a custodian or other qualified witness who can explain the record-keeping procedure utilized.") (emphasis added); see also United States v. Box, 50 F.3d 345, 356 (5th Cir. 1995) ("A qualified witness is one who can explain the system of record keeping and vouch that the requirements of Rule 803(6) are met . . . ."). The testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation. See United States v. Bueno-Sierra, 99 F.3d 375, 378–79 (11th Cir. 1996); United States v. Parker, 749 F.2d 628, 633 (11th Cir. 1984); United States v. Atchley, 699 F.2d 1055, 1058–59 (11th Cir. 1983); see also Box, 50 F.3d at 356 ("[T]he witness need not have personal knowledge of the record keeping practice or the circumstances under which the objected to records were kept."). As long as the trustee presented enough circumstantial evidence to establish the trustworthiness of the underlying documents, he did not need to present testimony from the person who actually prepared them; his own testimony would suffice. See Itel Capital Corp. v. Cups Coal Co., 707 F.2d 1253, 1259 (11th Cir. 1983); see also United States v. Flom,

12

558 F.2d 1179, 1182 (5th Cir. 1977) ("Although the usual case involves an employee of the preparing business laying the necessary foundation under 803(6), the law is clear that under circumstances which demonstrate trustworthiness it is not necessary that the one who kept the record, or even had supervision over [its] preparation, testify.") (citation omitted).[2]

The trustee's testimony shows that his knowledge of the underlying documents is greater than what we concluded was sufficient in a case that raised a similar issue. See Allen v. Safeco Ins. Co. of Am., 782 F.2d 1517, 1519 (11th Cir. 1986). In Allen a state fire marshal testified about the contents of a lab report that his office did not create. Id. at 1519. His testimony established only that the lab "regularly analyzed samples sent from his office" — not the reliability of the lab test, nor even his secondhand knowledge of the lab's procedures. Id. That was enough; we held that the district court had not abused its discretion when it admitted that lab report under Rule 803(6). Id. In this case, the trustee knew secondhand how IMA created its records from his interviews. Based on his investigation, he knew firsthand about the reliability of those records. That is enough.

---

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

The underlying documents would have been admissible into evidence as business records. The bankruptcy court therefore did not abuse its discretion by admitting the trustee's Rule 1006 summaries based on them into evidence.

### III.

The defendants also contend that the trustee's Rule 1006 summaries were insufficient to establish that IMA was a Ponzi scheme. "A Ponzi scheme uses the principal investments of newer investors, who are promised large returns, to pay older investors what appear to be high returns, but which are in reality a return of their own principal or that of other investors." Wiand v. Lee, 753 F.3d 1194, 1201 (11th Cir. 2014). A key feature of most Ponzi schemes is that the "entities used to perpetrate the scheme usually conduct little to no legitimate business." Id. The bankruptcy court expressly considered whether IMA conducted some legitimate business, and it found that IMA was not set up to, and did not, conduct any legitimate business at all. We review that finding only for clear error. In re TOUSA, Inc., 680 F.3d at 1310. The defendants assert that the bankruptcy court could have found that IMA conducted "substantial legitimate business operations." Under the clear error standard, however, could have is not enough. They must show that the bankruptcy court could not have reasonably made the finding that it did. See United States v. Almedina, 686 F.3d 1312, 1315 (11th Cir. 2012) ("Where a fact pattern gives rise to two reasonable and different constructions, the

14

factfinder's choice between them cannot be clearly erroneous.") (quotation marks omitted).  The bankruptcy court's finding that IMA was a Ponzi scheme was not clearly erroneous.

**AFFIRMED.**