[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-13519
Non-Argument Calendar
_____

D.C. Docket No. 3:12-cr-00052-CAR-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WALTER BUTLER, JR.,
ORLANDO BROCK,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Georgia
_____

(November 13, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Following a jury trial, Walter Butler, Jr., appeals his conviction and sentence for aiding and abetting a bank robbery, and Orlando Brock appeals his convictions for aiding and abetting an armed bank robbery and aiding and abetting the brandishing of a firearm during a crime of violence. After careful review, we affirm in all respects.

## I.  General Background

This case concerns the robbery of the North Georgia Credit Union (the "bank") in Lavonia, Georgia, on September 22, 2011. The idea to rob the bank came about after Brock, a FedEx driver who made deliveries to the bank, noticed that an armored truck made a cash delivery to the bank on a Thursday morning. Brock told this observation to a friend, Allen Colbert. Brock and Colbert then began observing the bank from the parking lot of a nearby department store. In July 2011, the two went to the bank with the intention of robbing it. By that point, Colbert's co-worker, Juan Camp, had joined the scheme. Another individual also was involved on that occasion. The group decided against the robbery that day.

In September 2011, Brock decided to give the robbery another try. He recruited Butler to be a driver and he planned the robbery for Thursday, September 22. Colbert and Camp took the day off work. On the morning of September 22, Brock and Butler picked up Colbert from his home and drove to Butler's home in Bowersville, Georgia, where they met Camp. Brock had two guns with him in his

2

truck. After meeting at Butler's, the four individuals left in two trucks. Brock drove with Camp and Colbert in Brock's truck. Butler drove Camp's white truck because Butler's truck would not start.

Eventually, both trucks arrived near the bank in Lavonia. Butler parked nearby at a department store. Brock, Camp, and Colbert, in Brock's truck, waited for the armored car to finish its delivery and for bank employees to go to lunch. While they were waiting, Colbert observed Brock having cell phone conversations with Butler, who was acting as a lookout. When the time was judged to be opportune, Camp and Colbert exited Brock's truck with his guns and entered the bank wearing masks. Once inside the bank, one of the two men displayed a gun, shouting "Don't push the button." The robbers demanded and received access to the vault, from which they stole over $300,000. After Camp and Colbert left, bank employees called police and reported the robbery. Butler picked up Camp and Colbert in the white truck, and they fled the scene.

Alerted to be on the lookout for three black males in a white truck in connection with the robbery, a trooper with the Georgia State Patrol spotted a white truck driving erratically. The trooper attempted a traffic stop. Instead of pulling over, the truck turned off the road and drove into a wooded area. When the truck eventually stopped, all three occupants jumped out and started running. One of the passengers was carrying a gun. Butler was found nearby with the assistance

3

of a police canine unit.  When found, Butler told police that he was "just the driver."  Inside the truck, police found around $290,000, a gun, and Colbert's cell phone.  Camp and Colbert were apprehended later.

Butler, Camp, and Colbert were indicted by a federal grand jury in December 2012.  Count One charged that the three defendants, aided and abetted by each other, committed armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d), and 2.  Count Two charged that the defendants, aided and abetted by each other, brandished a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  Butler pled not guilty.  Before the filing of a superseding indictment in August 2013, Camp and Colbert pled guilty under written plea agreements in which they agreed to cooperate with the government.

In the superseding indictment, Brock and Butler were charged with the same two counts as in the original indictment.  They both pled not guilty.  The case proceeded to a jury trial in April 2014.  At trial, the government presented, among other evidence, cell-phone records designed to link the four suspects to the robbery and to each other.  After a five-day trial, Butler was found not guilty of aiding and abetting an *armed* bank robbery and not guilty of aiding and abetting the brandishing of a firearm during a crime of violence.  The jury found Butler guilty of the lesser included offense of aiding and abetting a bank robbery.  Brock was

4

found guilty of both aiding and abetting an armed bank robbery and aiding and abetting the brandishing of a firearm during a crime of violence.

At sentencing, the district court denied Butler's request for a minor-role reduction under United States Sentencing Guidelines Manual (U.S.S.G.) § 3B1.2 and sentenced him to 87 months' imprisonment. The court sentenced Brock to a total term of 192 months' imprisonment. Brock and Butler both appealed.

## II.  Brock's Appeal

On appeal, Brock presents one challenge to his convictions. He contends that the district court erred in admitting AT&T Wireless cell-phone records because the government did not establish the admissibility of the records through a custodian or qualified witness. The cell-phone records, Brock contends, gave a "prejudicial imprimatur of reliability" to the testimony of the cooperating witnesses, Camp and Colbert.

We review a district court's evidentiary rulings for an abuse of discretion. *United States v. Lebowitz*, 676 F.3d 1000, 1009 (11th Cir. 2012). We review the factual findings underlying those rulings for clear error. *Id.*

The cell-phone records were admitted under the business-records exception to the rule against hearsay. *See* Fed. R. Evid. 803(6). To establish that this exception applied, the government had to show two things: (1) that the documents

were authentic and (2) that they met the requirements of Rule 803(6).[1]  *George Russell Curtis, Sr. Living Tr. v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1266 (11th Cir. 2015).  Under Rule 803(6), an authenticated document is admissible as a business record if it meets the following conditions: (a) it "was made at or near the time by—or from information transmitted by—someone with knowledge"; (b) it "was kept in the course of a regularly conducted activity"; (c) and "making the record was a regular practice of that activity."  Fed. R. Evid. 803(6)(A)–(C).  The primary purpose of these requirements is to "determine[] whether the evidence possesses sufficient indicia of reliability and trustworthiness."  *United States v. Dreer*, 740 F.2d 18, 20 (11th Cir. 1984).  Nonetheless, even if the three requirements of Rule 803(6)(A)–(C) are met, the records may still be inadmissible if the opponent shows that "the source of information or the method or circumstances of preparation indicate a lack of trustworthiness."  Fed. R. Evid. 803(6)(E).

The proponent may establish the requirements of Rule 803(6) through "the testimony of the custodian or another qualified witness."  Fed. R. Evid. 803(6)(D).  In other words, someone who is knowledgeable about the procedures used to create the alleged business records must testify.  *See United States v. Garnett*, 122 F.3d 1016, 1018-19 (11th Cir. 1997) ("[Rule] 803(6) requires the testimony of a

---

[1] It is unclear whether Brock challenges both showings on appeal.  Out of an abundance of caution, we will address both.

6

custodian or other qualified witness who can explain the record-keeping procedure utilized."). "The testifying witness does not need firsthand knowledge of the contents of the records, of their authors, or even of their preparation." *In re Int'l Mgmt. Assocs., LLC*, 781 F.3d at 1268.

Here, the district court did not abuse its discretion by admitting the cell-phone records. The government sought to admit the records through the testimony of an AT&T independent contractor. The contractor testified that he was familiar with AT&T's record-keeping practices, based both on his fifteen years of employment with A&T, which ended in 2009, and on his experience as an independent contractor for AT&T, which began in 2012. As an independent contractor, he provided testimony in court proceedings for AT&T about cell-phone records. The contractor also testified that he had spoken directly with the records custodian at AT&T about the specific records at issue. Accordingly, the government met its "light burden" of establishing the authenticity of the documents through the testimony of someone knowledgeable about them. *See In re Int'l Mgmt. Assocs., LLL*, 781 F.3d at 1267.

The government also satisfied the three requirements of Rule 803(6) through the testimony of a "qualified witness." Fed. R. Evid. 803(6)(D). The contractor testified that, based on his work experience with AT&T, both as an employee and as a contractor, as well as his discussions with the records custodian several days

before trial, the records were made at or near the time by someone with knowledge, the records were kept in the course of regular business activity, and making a record was the regular practice of that activity. *See* Fed. R. Evid. 803(6). Crediting the contractor's testimony, the district court was well within its discretion to conclude that the contractor was sufficiently knowledgeable to explain AT&T's record-keeping practices as required by Rule 803(6)(D) and that the records themselves satisfied Rule 803(6)(A)–(C).

Brock contends that admission of the testimony and records was erroneous because any knowledge that the contractor had about the company's record keeping was not his, because he did not work for AT&T when the records were prepared, but that of someone who was still employed with the company. Even assuming this is true, the contractor did not need independent or firsthand knowledge about the content or preparation of the records. *In re Mgmt. Assocs., LLC*, 781 F.3d at 1268. For example, in a recent bankruptcy decision, we held that business records admitted through the trustee were admissible because, although the trustee learned about the relevant record-keeping practices from someone else, he still possessed the requisite knowledge of the practices to satisfy Rule 803(6). *See id.* at 1267-69. As long as the government "presented enough circumstantial evidence to establish the trustworthiness of the underlying documents," it did not need to present the testimony of someone with firsthand knowledge of the

preparation of the records. *Id.* at 1268. Here, the government did so through the testimony of the independent contractor.

Brock has not otherwise shown that the cell-phone records are unreliable or indicate a lack of trustworthiness. *See* Fed. R. Evid. 803(6)(E). Consequently, the records were admissible under the business-records exception. We affirm Brock's convictions.

### III. Butler's Appeal

On appeal, Butler presents four main challenges to his conviction and sentence: (1) the district erred by admitting cell-phone records; (2) insufficient evidence supported his conviction; (3) the court erred by refusing to instruct the jury on the crime of accessory after the fact, which Butler claims is a lesser-included offense of aiding and abetting; and (4) the court erred by refusing to apply a minor-role reduction at sentencing.[2] We will address each argument in turn.

### A.

---

[2] Butler also argues that the district court improperly denied him the opportunity to call witnesses at sentencing. We have reviewed the sentencing transcript and find this contention to be without merit. Butler never attempted to call a witness to testify, even after the court asked him if he wished to present "[a]nything further" (to which he responded, "No"), nor did the court ever say he could not. In support of his argument, Butler highlights a single statement from the district court. Specifically, at the outset of the sentencing hearing, Butler's counsel stated, "I assume, Your Honor, we can use the tables here. I want to call witnesses and some argument." The court responded, "Well, no, come on up here[,]" and then formally called the case. In context, it is clear that the court's "no" response was to counsel's assumption that "we can use the tables here." It was not a prohibition on witness testimony. We therefore reject this claim of error without further discussion.

9

We first address Butler's contention that the district court abused its discretion by admitting the AT&T cell-phone records. Butler's challenge to the cell-phone records is slightly different than Brock's. Whereas Brock argued that the records were not properly admitted through the testimony of a "qualified witness," Butler contends that the records simply were not relevant as to him because the phone number at issue was registered to another person with no connection to the robbery. He further asserts that admission of the records was unfairly prejudicial under Rule 403, Fed. R. Evid., because the records were the only evidence, "apart from the testimony of the unreliable co-conspirators," Butler's Br. at 16, from which the jury could have inferred that Butler knew about the scheme before the robbery.

The AT&T contractor testified that the subscriber of a cell-phone number ending in 9627 was someone named "Willie Butler." The contractor had no other information about who Willie Butler was in relation to the case. Butler objected that records of a phone number registered to Willie Butler were irrelevant because they had no probative value as to Butler. The district court overruled the objection, finding that the objection went to the weight of the evidence, not its admissibility.

The district court did not abuse its discretion by admitting the cell-phone records for the 9627 number. Although the contractor's testimony and the records themselves did not directly connect Butler to the 9627 number, other evidence

10

did.[3]    For example, Colbert testified that the 9627 number was Butler's, and the 9627 number was listed in Colbert's phone under the name "Junior," which, according to Colbert and other witnesses, was Butler's nickname.  In addition, Colbert testified that Brock made several phone calls in his presence to Butler before the robbery.  In light of this other evidence, phone records showing numerous contacts between Brock's phone and the 9627 number throughout the day of the robbery made it more probable that Butler was using the 9627 number—even if no connection was shown between the subscriber of that number and Butler—and that Butler was in regular communication with Brock on the day of the robbery.  *See* Fed. R. Evid. 401.  This, in turn, supported Camp's and Colbert's testimony that Butler was involved in the scheme to rob the bank before the robbery occurred.

Any prejudice resulting from the admission of the cell-phone records was not "unfair" prejudice with which Rule 403 is concerned.  *See United States v. King*, 713 F.2d 627, 631 (11th Cir. 1983) ("[I]n a criminal trial relevant evidence is inherently prejudicial; it is only when *unfair* prejudice *substantially* outweighs

---

[3] Butler asserts that the phone number reflected in the records was not "authenticated as belonging to Defendant."  This misunderstands the burden of authentication.  To authenticate a piece of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it."  Fed. R. Evid. 901(a).  Here, that means only that the government needed to show that the records were genuinely the phone records for a phone number ending in 9627 and registered to Willie Butler.  For the same reasons stated earlier with regard to Brock, the government met its light burden of authentication.  Whether Butler was using the 9627 number was an inference for the jury to draw.

11

probative value that the rule permits exclusion." (emphases in original)); Fed. R. Evid. 403 advisory committee's note to 1972 proposed rules (explaining that "unfair prejudice" means "an undue tendency to suggest decision on an improper basis"). In short, the cell-phone records were relevant and admissible as to Butler, and we affirm in this respect.

## B.

Butler argues that the evidence was insufficient to establish that he aided and abetted the bank robbery. The only evidence of his involvement, Butler contends, came from Camp and Colbert, whose testimony was "otherwise insubstantial" and insufficient to sustain his convictions.

Ordinarily, we review *de novo* whether sufficient evidence supports a conviction, considering the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the government. *United States v. Browne*, 505 F.3d 1229, 1253 (11th Cir. 2007). We will affirm the verdict if a reasonable jury could conclude that the evidence established guilt beyond a reasonable doubt. *Id.* But because Butler did not move for a judgment of acquittal at any time during trial, "we may reverse the conviction only to prevent a manifest miscarriage of justice." *United States v. Tagg*, 572 F.3d 1320, 1323 (11th Cir. 2009) (internal quotation marks omitted). In any case,

though, Butler has not shown that he is entitled to relief even under our traditional standard of review for sufficiency-of-the-evidence challenges.

Aiding and abetting, under 18 U.S.C. § 2, "is not a separate federal crime, but rather an alternative charge that permits one to be found guilty as a principal for aiding or procuring someone else to commit the offense." *United States v. Sosa*, 777 F.3d 1279, 1292 (11th Cir. 2015) (internal quotation marks omitted). To convict under a theory of aiding and abetting, the government must prove that (1) someone committed the substantive offense; (2) the defendant affirmatively acted in furtherance of the offense; and (3) the defendant intended to facilitate the offense's commission. *Id.*; *Tagg*, 572 F.3d at 1324; *see also Rosemond v. United States*, 572 U.S. ___, ___, 134 S. Ct. 1240, 1245 (2014)  Butler does not dispute that Camp and Colbert committed the substantive offense of bank robbery. We therefore limit our discussion to the remaining two elements.

The evidence was sufficient to allow a reasonable jury to find Butler guilty beyond a reasonable doubt of aiding and abetting a bank robbery. Viewing the evidence in the light most favorable to the government, Butler met with Brock, Camp, and Colbert before the robbery, he drove to the bank in Camp's truck and waited nearby, he communicated with Brock to determine the timing of the robbery, and he picked up Camp and Colbert after the robbery to flee the scene with the money. When he was apprehended, Butler told police that he was "just

13

the driver." Based on this evidence, a reasonable jury could have concluded that Butler acted in furtherance of the bank robbery, with the intent of aiding the offense's commission, by acting as a lookout before the robbery and a getaway driver after it.

Butler argues that Camp's and Colbert's testimony about Butler's involvement is insufficient to sustain his convictions because it was not supported by corroborating evidence and was "otherwise insubstantial." He is wrong. This Circuit's case law is clear "that uncorroborated testimony of an accomplice is sufficient to support a conviction in the Federal Courts if it is not on its face incredible or otherwise insubstantial." *United States v. LeQuire*, 943 F.2d 1554, 1562 (11th Cir. 1991) (internal quotation marks omitted); *see United States v. Howard*, 742 F.3d 1334, 1342 (11th Cir. 2014) ("We do not second guess the jury's determination of credibility issues."). Testimony is "incredible or insubstantial on its face" if it relates "to facts that the witness physically could not have possibly observed or events that count not have occurred under the laws of nature." *LeQuire*, 943 F.2d at 1562 (brackets and internal quotation marks omitted). Camp's and Colbert's testimony was neither incredible nor insubstantial. They both testified, largely consistent with each other and the other evidence, about facts regarding Butler's involvement that would have been within their personal knowledge as participants in the scheme to rob the bank. Accordingly,

14

there was sufficient evidence supporting the jury's finding that Butler aided and abetted a bank robbery.

## C.

Next, Butler contends that the district court erred in refusing to charge the jury on what he asserts is a lesser-included offense of aiding and abetting: accessory after the fact. Butler argues that refusing to give the charge was error because it deprived the jury of the ability to determine when "hot pursuit" had ended and whether Butler had advance knowledge of the robbery.

"[A] defendant can be convicted only of a crime charged in the indictment." *United States v. Madden*, 733 F.3d 1314, 1318 (11th Cir. 2013). The Federal Rules of Criminal Procedure also permit a defendant to be found guilty of "an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c)(1). In other words, a defendant may be found guilty of a lesser-included offense of a crime charged in the indictment.

To establish that the district court erred in refusing to give an instruction on a lesser-included offense, Butler must satisfy a two-party test. *United States v. Williams*, 197 F.3d 1091, 1095 (11th Cir. 1999). First, Butler "must show that the charged offense encompasses all of the elements of the lesser offense (the 'elements' test)." *Id.*; *see Schmuck v. United States*, 489 U.S. 705, 716, 109 S. Ct. 1443, 1450 (1989). Second, he must show that the court's refusal was an abuse of

15

discretion, which "may occur where the evidence would permit the jury rationally to acquit the defendant of the greater, charged offense and convict him of the lesser." *Williams*, 197 F.3d at 1095.

Butler asserts that accessory after the fact is a lesser-included offense of aiding and abetting. He does not, however, explain why this is so, nor does he provide any comparison of the elements of the two crimes. As a result, he has failed to show that the charged offense encompasses all of the elements of the lesser offense. *See Schmuck*, 489 U.S. at 716, 109 S. Ct. at 1450. Thus, the district court's refusal to give the requested instruction is due to be affirmed.

In any case, under the elements test, the crime of accessory after the fact is not a lesser-included offense of aiding and abetting. "[A] person is liable under § 2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Sosa*, 777 F.3d at 1292 (quoting *Rosemond*, 574 U.S. at ___, 134 S. Ct. at 1248). Under 18 U.S.C. § 3, "Whoever, knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment, is an accessory after the fact." Comparing the elements of the offenses, it is clear that accessory after the fact contains an element that aiding and abetting does not: that the defendant give assistance "in order to hinder or prevent [the offender's]

16

apprehension, trial or punishment." 18 U.S.C. § 3; *United States v. Avants*, 367 F.3d 433, 450 (5th Cir. 2004) (holding that "accessory after the fact is not a lesser included offense of aiding and abetting because the former requires proof that the defendant gave assistance in order to prevent the apprehension, trial, or punishment of the offender" (internal quotation marks omitted)).

Because the lesser offense, accessory after the fact, requires proof of an element not required for the greater offense, aiding and abetting, the district court was not permitted under Rule 31(c) to instruct the jury as requested by Butler. *Schmuck*, 489 U.S. at 716, 109 S. Ct. at 1450 ("Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)."). To do so would have allowed the jury to convict Butler of an unindicted offense. *See Madden*, 733 F.3d at 1318; Fed. R. Crim. P. 31(c). Consequently, we affirm the district court's refusal to give Butler's requested instruction, although for different reasons than relied upon by the court.[4]

## D.

Finally, Butler challenges the district court's rejection of his request for a minor-role reduction under U.S.S.G. § 3B1.2. A district court's determination of a defendant's role in an offense is a finding of fact that we review for clear error.

---

[4] We may affirm on any ground supported by the record. *United States v. Hall*, 714 F.3d 1270, 1271 (11th Cir. 2013).

17

*United States v. Rodriguez De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (*en banc*).

Under the Sentencing Guidelines, a defendant may receive a reduction for having a limited role in the offense. U.S.S.G. § 3B1.2. The defendant may receive a two-level reduction if he was a minor participant, a four-level reduction if he was a minimal participant, or a three-level reduction if his culpability was somewhere in between. *Id.* Minor participants are those who are less culpable than most other participants, but whose role could not be described as minimal. *Id.* § 3B1.2 cmt. n.5. Butler contends that a two-level minor-role reduction was warranted because he was not involved in any of the planning for the bank robbery.

The proponent of a downward adjustment bears the burden of establishing his or her role in the offense by a preponderance of the evidence. *De Varon*, 175 F.3d at 939. The district court's determination of the defendant's role in the offense should be informed by two principles: (1) the defendant's role in the relevant conduct for which he is held accountable at sentencing, and (2) the defendant's role as compared to that of other participants in the relevant conduct. *Id.* at 940. Of these principles, the first is more important and may be dispositive. *Id.* at 945.

The district court did not clearly err in finding that Butler was not a minor participant. Butler has not shown that he played a minor role in the relevant

18

conduct for which he was held accountable. Despite Butler's lack of participation in the initial planning of the robbery, the evidence at trial showed that he aided and abetted the bank robbery by acting as both lookout for the other members of the group and getaway driver for the two bank robbers. The district court found that Butler's role as lookout and getaway driver were necessary to the bank robbery. *See United States v. Willis*, 559 F.2d 443, 444 (5th Cir. 1977)[5] ("[O]ne who does no more than drive a getaway car may be as equally culpable as those actually entering the bank."). Even assuming Butler's role may have been less than the other participants engaged in the bank-robbery scheme, he was "not automatically entitled to a minor role adjustment" for that reason. *Rodriguez De Varon*, 175 F.3d at 944; *see id.* ("The fact that a defendant's role may be less than that of other participants engaged in the relevant conduct may not be dispositive of role in the offense, since it is possible that none are minor or minimal participants."). The district court's denial of Butler's requested minor-role reduction is supported by the record and did not involve a misapplication of the law. *See id.* at 945. Therefore, the court's determination of Butler's role was not clearly erroneous.

## IV. Conclusion

In sum, we affirm Brock's convictions because the district court properly admitted evidence of cell-phone records based on the testimony of a qualified

---

[5] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

witness.  We also affirm Butler's conviction and sentence because the cell-phone records were relevant and admissible, sufficient evidence supported his conviction for aiding and abetting a bank robbery, the court did not err in refusing to instruct the jury on the offense of accessory after the fact because it is not a lesser-included offense of aiding and abetting, and the court did not clearly err in determining Butler's role in the offense or otherwise procedurally err at sentencing. Consequently, we affirm in all respects.

**AFFIRMED.**